IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| J W SEALS, JR., VERGIE SEALS, AND MARIE L. PACE, § § § *Plaintiff*, § § v. § CIVIL ACTION NO. 1:22-CV-383-MJT-CLS § ITEX GROUP LLC, § § § *Defendant*. § | |

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S SECOND MOTION TO DISMISS (Doc. #38)**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned United States magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. TEX. CIV. R. 72. Pending before the court is Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. #38). After review, the undersigned recommends that the motion be granted in part and denied as moot in part.

**I.    Background**

Plaintiffs J W Seals, Jr., Vergie Seals, Marie L. Pace, proceeding *pro se*, filed suit on September 19, 2022, alleging claims related to the conditions of Defendant's apartment buildings under the Fair Housing Act, Americans with Disabilities Act, and state law claims. (Doc. #1.) In addition to providing court-ordered additional information regarding their factual allegations (docs. #27, 34), Plaintiffs have amended their claims twice, with the Second Amended Complaint,

filed April 17, 2023, being their operative pleading.[1] (Doc. #35.) Defendant filed a Motion to Dismiss Plaintiff's Second Amended Complaint on May 1, 2023. (Doc. #38.) Plaintiffs responded[2] (doc. #46), Defendant replied (doc. #47), and Plaintiffs filed a sur-reply (doc. #53). This matter is now ripe for review.

## II. Plaintiffs' Claims and Factual Allegations

The following factual allegations are from Plaintiff's Second Amended Complaint (doc. #35) and Plaintiffs' answers (doc. #34) to the court's questionnaire (doc. #27) ordering Plaintiffs to provide additional details behind the facts of their claims.

Plaintiff Vergie Seals ("Vergie") was a resident at 4205 Sarah Street, #131, Beaumont, Texas 77713 [hereinafter "the apartment"] from approximately July 2019 to an unspecified date after September 19, 2022. (Doc. #34 at 1, 2.) Vergie is an approximately 87-year-old African American woman with physical disabilities including visual and mobility impairments. (Doc. #34 at 4, 7-8, 22, 28.) Plaintiffs JW Seals Jr. ("JW") and Marie L. Pace ("Marie") are Vergie's adult children who did not reside at the apartment but frequently visited Vergie to provide in-home care due to Vergie's disabilities. (Doc. #34 at 4-6.) JW and Marie estimate they visited Vergie at the apartment approximately five times a week, including overnight stays, to provide care common types of care including personal care, medication management, meal preparation, housekeeping, transportation, vision rehabilitation services, emotional support, health monitoring, assistive devices, and safety modifications. (Doc. #34 at 2, 4-6.) JW and Marie are also African American, but they are neither elderly nor disabled. (Doc. #34 at 8, 23.) Although JW and Marie were never residents of the apartment per the lease agreement, they state in their answers to the court's

---

[1] The status of Plaintiffs' current operative pleading is discussed more fully *infra* § IV.A.2.

[2] Plaintiffs titled this document as an "objection" to Defendant's Motion to Dismiss. The undersigned construes this as a response.

questionnaire that they are financially responsible for and authorized to make decisions regarding Vergie, though they do not specify how so nor allege they are guarantors under the apartment lease agreement. (Doc. #34 at 2-3.) Plaintiffs indicated, however, that Marie has Power of Attorney as to Vergie. (Doc. #34 at 80-87.)

Plaintiffs allege that the apartment in which Vergie resided, and JW and Marie frequently visited, was in "uninhabitable, inhumane, and hazardous" conditions, giving rise to numerous causes of actions against Defendant, who owns the apartment building. (Doc. #35 at 2, ¶ 6.) Plaintiffs allege they were subject to the following conditions: pest infestations including roaches and bedbugs, widespread mold contamination, exposure to raw sewage, structural defects, and deficient security. (Doc. #35 at ¶ 7.)

Specifically, Plaintiffs allege there is pervasive mold growth throughout the apartment building, such as the common areas and the apartment units, including Vergie's apartment. (Doc. #35 at ¶ 18.) Plaintiffs consistently find mold on the floors, walls, and ceilings of the apartment, and the mold reappears, despite regular attempts to clean the mold, because the contamination is entrenched within the walls and foundation of the property. (Doc. #35 at ¶ 18.) The mold is exacerbated by other unsanitary conditions of the property, such as roof leaks, plumbing issues, and pipes which leak wastewater and raw sewage. (Doc. #35 at ¶ 19.) The raw sewage flows directly into the courtyard because of the faulty plumbing system. (Doc. #35 at ¶ 24.)

Plaintiffs allege the apartment building has structural issues in the common areas and the apartment units, including cracks and uneven floor surfaces that make it unsafe to walk through the affected areas. (Doc. #35 at ¶¶ 23, 24.)

Plaintiffs allege that Defendant failed to maintain the safety and security of the apartment, as security is nonexistent, lighting in common areas is inadequate, the property is generally

disorganized and in poor condition, and dumpsters are not regularly available to the residents. (Doc. #35 at ¶ 25.) According to Plaintiffs, transients, trespassers, and Defendant's own maintenance employees frequently enter the property to drink, use drugs, and engage in other unlawful behavior in the common areas of the apartment building, leaving behind garbage and hazardous materials such as empty bottles, broken glass, drugs, drug paraphernalia, and human waste. (Doc. #35 at ¶ 25.)

Plaintiffs allege these conditions harmed their health and made the apartment uninhabitable, thereby forcing Vergie to vacate the apartment. (Doc. #35 at ¶¶ 11, 16, 29-30.) They regularly suffer from, and have received medical treatment for, cold and flu-like symptoms, nausea, respiratory problems like asthma, gastrointestinal problems, fatigue, insomnia, headaches, chest pains, skin ailments and rashes, and insect bites, among other symptoms. (Doc. #35 at ¶¶ 30-31.) All these symptoms dissipate when Plaintiffs are away from the apartment and not exposed to the hazardous conditions. (Doc. #35 at ¶ 30.) Plaintiffs also allege damage to their emotional and mental health. (Doc. #35 at ¶ 32.)

In addition to damaging their health, the apartment conditions have resulted in financial harm to Plaintiffs. (Doc. #35 at ¶ 33.) Plaintiffs have had to discard many personal possessions because of the apartment conditions, including beds, mattresses, bedding, various electrical appliances such as televisions and microwaves, furniture, food, clothing, and other assorted items including a priceless collection of cookbooks passed down through their family. (Doc. #35 at ¶¶ 33-35.) Plaintiffs were forced to keep all their personal belongings, from food to clothing, in airtight plastic containers to prevent infestation. (Doc. #35 at ¶ 35.) Plaintiffs were unable to fully utilize the bathroom for bathing due to the mold. (Doc. #35 at ¶ 35.) Plaintiffs had to purchase their own insecticide and cleaning products to combat the pest infestations and remove visible

mold. (Doc. #35 at ¶ 36.) Plaintiffs were further forced to stay in hotels due to the conditions at their own expense. (Doc. #35 at ¶ 29.)

Plaintiffs further allege that these conditions are not just limited to their apartment but, rather, are present throughout the entire apartment building and other apartment buildings owned by Defendant. Specifically, Plaintiffs allege that Defendant refuses to adequately maintain apartment buildings inhabited primarily by disabled, elderly, and/or low-income black residents, whereas Defendant adequately maintains buildings inhabited primarily by white residents. (Docs. #35 at ¶¶ 14, 112, #34 at 20, 23.) Plaintiffs allege that this disparate treatment in building maintenance is discriminatory based on the race, age, and ability of a particular building's primary residents. (Docs. #35 at ¶¶ 14, 112, #34 at 23.)

Relatedly, Plaintiffs allege they experienced discrimination in the apartment leasing process. For example, Defendant's leasing agent recommended run-down apartments to elderly black tenant applicants such as Vergie, despite the availability of similar units in better-maintained buildings. (Doc. #34 at 22-23.) In recommending these run-down apartments, Defendant intentionally misrepresents that the apartments are well-maintained. (Doc. #35 at ¶ 40.) Additionally, during the application process, Defendant's leasing agent made inappropriate and discriminatory comments about Vergie's age and race, implying she would be happier in a different, less desirable neighborhood. (Doc. #34 at 23.) Marie applied for an apartment unit at a different building owned by Defendant but was denied despite meeting all requirements for renting the apartment, and Marie later learned that the apartment unit had been rented out to a white tenant with similar qualifications. (Doc. #34 at 23.)

Plaintiffs allege that Defendant has actual and/or constructive knowledge of the uninhabitable apartment conditions. (Doc. #35 at ¶¶ 8, 26.) Defendant has received multiple

government notices regarding violations of municipal and health and safety codes as well as orders to repair the premises.  (Doc. #35 at ¶¶ 8, 26.)  Plaintiffs and other tenants have repeatedly complained to Defendant about the conditions, and, further, a simple walkthrough of the property would notify Defendant of the conditions.  (Doc. #35 at ¶¶ 8, 26.)  According to Plaintiffs, the Department of Health has received formal complaints regarding the property.  (Doc. #35 at ¶ 20.)

Plaintiffs alleged that, despite their knowledge of these conditions and the harmful effects they have had on Plaintiffs, Defendant deliberately and intentionally refuses to take any action to address the issues.  (Doc. #35 at ¶¶ 8, 12, 22, 38.)  For example, Plaintiffs have repeatedly requested repairs to address the mold, but Defendant ignored the requests, instead opting to clean the visible surface mold in lieu of professional mold remediation.  (Doc. #35 at ¶¶ 13, 20, 22.)

Furthermore, Plaintiffs allege that Defendant has retaliated against Plaintiffs and other tenants in response to complaints about the apartment conditions by threatening eviction, imposing unlawful penalties, and engaging in other abusive tactics.  (Doc. #35 at ¶¶ 15, 28-29.)

Based on these factual allegations, Plaintiffs allege the following claims: (1) violations of the Fair Housing Act, 42 U.S.C. §§ 3601-3619; (2) violations of Title VI, 42 U.S.C. §§ 2000(a)-2000(h)-6; (3) violations of the Texas Fair Housing Act, TEX. PROP. CODE §§ 301.001 et seq.; (4) breach of warranty of habitability; (5) breach of the covenant of quiet enjoyment; (6) negligence; (7) retaliation under TEX. PROP. CODE § 92.331 et seq.; (8) constructive eviction; (9) intentional infliction of emotional distress; (10) fraud and misrepresentation.[3]  (Doc. #35 at 19-51.)

### III.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must contain sufficient facts, which accepted as true, "state a claim to relief that is

---

[3] Plaintiffs originally alleged an additional claim under the Americans with Disabilities Act.  However, Plaintiffs no longer allege such a claim according to the Second Amended Complaint (doc. #35), the current operative pleading.

6

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Great Lakes Dredge & Dock Co. LLC v. Louisiana*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 12(b)(6) must be read in tandem with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also Iqbal*, 556 U.S. at 677-78; *Twombly,* 550 U.S. at 555. To decide whether the complaint states a valid claim for relief, the court accepts all well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Great Lakes Dredge,* 624 F.3d at 210. However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679. The inquiry focuses on the allegations in the pleadings and not on whether the plaintiff has sufficient evidence to succeed on the merits. *Ackerson v. Bean Dredging*, *LLC*, 589 F.3d 196, 209 (5th Cir. 2009).

Proceeding *pro se*, Plaintiffs' pleadings are necessarily held to "less stringent standards than formal pleadings drafted by lawyers," and are liberally construed by the court. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002).

### IV. Discussion

#### A. Federal Claims

Plaintiffs assert two federal and eight state law claims in their Second Amended Complaint (doc. #35). Thus, original jurisdiction for this suit is federal question jurisdiction based on the two federal claims brought under the FHA and Title VI and supplemental jurisdiction over the state law claims. 28 U.S.C. §§ 1331, 1367(a). Supplemental jurisdiction over the state law claims is discretionary and may be declined if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Accordingly, the undersigned will first determine whether Plaintiffs can maintain either of their two federal claims.

##### 1. *Fair Housing Act*

Plaintiffs' Fair Housing Act claim is premised on the allegation that Defendant discriminated against Plaintiffs by denying a habitable dwelling to Plaintiffs because of race in failing to maintain the apartment in habitable conditions. Though Defendant did not address it in its motion, the undersigned notes that, of the three Plaintiffs, only Vergie Seals ("Vergie") was a resident of Defendant's apartment building, thus the standing of Plaintiffs J W Seals, Jr. ("JW") and Marie L. Pace ("Marie") may be in question. As standing is a component of subject matter jurisdiction, the undersigned finds it appropriate to consider JW and Marie's standing on the federal claims at this stage. *HSBC Bank USA, N.A. v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018) (citing *Sample v. Morrison*, 406 F.3d 310, 312) (5th Cir. 2005)); FED. R. CIV. P. 12(h)(3).

Any "aggrieved person," as defined under the FHA, has a private cause of action under the FHA. *Swanson v. City of Plano*, No. 4:19-cv-412, 2020 WL 6799173, at *3 (E.D. Tex. Nov. 19, 2020); 42 U.S.C. § 3613(a)(1)(A). "An 'aggrieved person' includes any person who '(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be

injured by a discriminatory housing practice that is about to occur.'" *Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) (quoting 42 U.S.C. § 3602(i)). To have standing under the FHA, a plaintiff must meet "the [Article III] minima of injury in fact" and fall within the zone of interested protected by the law invoked. *Swanson*, 2020 WL 6799173, at *3 (citing *Havens Realty Corp v. Coleman*, 455 U.S. 363, 372 (1982); *Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020)).

Under the pleading standard on a motion to dismiss[4] and a liberal construction of Plaintiffs' complaint, the undersigned finds that JW and Marie have standing to bring an FHA claim. "Federal courts have held that [a certain] expenditure of time, cost, and effort confers FHA standing. . . ." *Swanson*, 2020 WL 6799173, at *3 (citations omitted). Here, JW and Marie allege they visited the apartment frequently, approximately five times a week, including overnight stays, and spent significant costs in an attempt to repair and/or address the uninhabitable apartment conditions, which the undersigned finds is a sufficient amount of time, cost, and effort to confer FHA standing on them as non-residents. *See Swanson*, 2020 WL 6799173, at *3 (finding that the plaintiff, who was not a resident but personally spent 20 hours a week at the property, satisfied the FHA standing requirements); *Chavez v. Aber*, 122 F. Supp. 3d 581, 592 (W.D. Tex. 2015) (finding FHA standing for "out-of-pocket expenses . . . resulting from Defendants' refusal to provide a reasonable accommodation"); *Caron Found. Of Fla., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012) (finding FHA standing for providing services and housing to 'protected individuals with disabilities"); *New Horizons Rehab., Inc. v. Indiana*, 400 F. Supp. 3d

---

[4] At the motion to dismiss stage, the undersigned construes the pleaded facts in the light most favorable to Plaintiffs and accepts as true all plausible inferences that arise from those facts. *See, e.g.*, *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citations omitted). Moreover, "[w]here a plaintiff provides more than a boilerplate recitation of the grounds for [liability] and instead makes some additional allegation to put the [defendant] on fair notice of the grounds for which it is being sued," litigants must wait for summary judgment. *Thomas v. City of Galveston*, 800 F. Supp. 826, 844-45 (citing *Leatherman v. Tarrant Cnty. Intel. & Coordination Unit*, 507 U.S. 163, 168-69 (1993)).

751, 761-62 (S.D. Ind. 2019) (finding FHA standing for a service and housing provider to disabled persons "because it claim[ed] to have been injured by a discriminatory housing decision"); *Morgan v. Western Rim Invs. 2013-3, L.P.*, No. 4:16-cv-00454, 2017 WL 6734175, at *5 (E.D. Tex. Nov. 21, 2017) (holding that a visitor who observed accessibility problems that would interfere with his ability to use the apartment had standing under the FHA); *Lane v. Cole*, 88 F. Supp. 2d 402, 406 (E.D. Penn. 2000) (holding that a visitor to a property claiming a distinct and palpable injury as a result of the discriminatory housing practice has standing to sue under the FHA); *Bullard v. Hous. Auth. of City of Monroeville*, No. 1:19-cv-159-TFM-MU, 2020 WL 12799454, at *3-7 (S.D. Ala. Mar. 23, 2020) (holding that non-resident plaintiffs who were regular visitors had standing under the FHA and collecting cases). Additionally, based on the pleaded allegations, JW and Marie's injury-in-fact places them in the zone of interest contemplated by the FHA. *Swanson* 2020 WL 6799173, at *3.

### 2. *Title VI*

Plaintiffs allege an additional federal claim under Title VI of the Civil Rights Act of 1964 in their Second Amended Complaint (doc. #35 at ¶¶ 48-52). Plaintiffs did not plead a Title VI claim in their original complaint (doc. #1). On March 24, 2023, the undersigned granted Plaintiffs leave to file an amended complaint "that contains a more detailed factual discussion explaining the basis of their claims and their damages," specifically responding in detail to an attached questionnaire. (Doc. #27 at 2.) Plaintiffs were not granted leave to add new claims, such as a Title VI claim, to their complaint.

In response to the undersigned's March 24, 2023, Order (doc. #27), Plaintiffs filed their First Amended Complaint (doc. #32) on April 14, 2023, which added more factual details and did

10

not add any new claims.[5]  Plaintiffs then, however, filed a Second Amended Complaint (doc. #35) on April 17, 2023.  Plaintiffs did not request leave of court to file a Second Amended Complaint, and Plaintiffs added a new claim under Title VI in addition to merely adding additional factual details.

For judicial efficiency, the undersigned will allow the Second Amended Complaint (doc. #35) to remain part of the record and serve as the operative pleading, as it primarily includes the additional factual details to support Plaintiffs' original claims that were requested by the undersigned's March 24, 2023, Order (doc. #27).  However, the undersigned must evaluate whether Plaintiffs should be retroactively granted leave to add a new claim under Title VI in their operative pleading.

Under the Federal Rules of Civil Procedure, a party may only amend its pleading after the period for amending as a matter of course[6] elapses either (1) with the opposing party's written consent or (2) with the court's leave, which should be "freely give[n] when justice so requires." FED. R. CIV. P. 15(a)(2).  Permissible reasons to deny a plaintiff leave to amend a complaint include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As is relevant here, the court may deny a plaintiff leave to amend a complaint if the court determines, however, that "the proposed change clearly is frivolous or advances a claim or defense

---

[5] In fact, Plaintiffs did not allege any federal claims, such as an FHA or ADA claim, in the first amended complaint (doc. #32 at 14-27).  Plaintiffs are free to voluntarily abandon claims without a motion for leave.

[6] The applicable deadlines under Rule 15 have long passed.  Thus, Plaintiffs were not entitled to amend their complaint as a matter of course and leave of court was required.

that is legally insufficient on its face."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile."); *Wright v. Allstate Ins. Co.*, 415 U.S. F.3d 384, 391 (5th Cir. 2005) (stating that futility of amendment is among the permissible bases for denial of a motion for leave to amend).

The undersigned finds that Plaintiffs should not be granted leave to add a new claim under Title VI on the ground that leave would be futile.

Title VI of the Civil Rights Act of 1964 provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d).  Plaintiffs' Title VI claim appears to be premised on similar allegations to their FHA claim—that Defendant discriminated against Plaintiffs by failing to maintain the apartment in habitable conditions based on race.  Plaintiffs make the conclusory allegation that Defendant receives public funding.  (Doc. #34 at 17.)  However, Plaintiffs do not specify whether these funds are federal funds, nor do they describe the nature, purpose, or intended beneficiaries of the funds. Additionally, Plaintiffs do not allege that they are the intended beneficiaries[7] of such funding, federal or otherwise.  Defendant's receipt of federal funding is required to state a claim under Title VI, and only the intended beneficiaries of the federal funding have standing to assert a Title VI claim.  *See, e.g.*, *Chaney v. E. Cent. Indep. Sch. Dist.*, No. SA-21-CV-01082-FB, 2022 WL 17574080, at *4 (W.D. Tex. Dec. 9, 2022) (citing *Azteca Enters., Inc. v. Dallas Area Rapid Transit*,

---

[7] Of the three Plaintiffs, only Vergie—the sole tenant under the lease agreement—could be the intended beneficiary of a federally funded housing program in which may Defendant participate.  Thus, even if Plaintiffs had alleged facts required to established standing, only Vergie could potentially have proceeded with this claim.

31 Fed. App'x 839, at *2 (5th Cir. 2002); *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996)); *Karlen v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 301-02 (Dist. Conn. 2009) (citations omitted).

The undersigned finds that Plaintiffs have not established standing to bring a Title VI claim. In the alternative, Plaintiffs have failed to state a claim under Rule 12(b)(6) as they have not alleged that (1) Defendant receives federal financial assistance and (2) that such funds were applied by Defendant to discriminatory programs or activities. *See, e.g.*, *Abron v. Dean Lumber Co., Inc.*, No. 2:99CV197, 2002 WL 353634005, at *2 (E.D. Tex. Mar. 14, 2002) (citing *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 7065 n.9 (5th Cir. 1994)).

Accordingly, granting Plaintiffs leave to add a Title VI claim would be futile, as the proposed Title VI claim is legally insufficient as pleaded in the Second Amended Complaint. Moreover, for the reasons discussed *infra* § IV.B, Plaintiffs should not be granted leave, yet again, to file a third amended complaint. Accordingly, Plaintiffs' Title VI claim (doc. #35 at ¶¶ 48-52) is stricken from the Second Amended Complaint.

### 3. *12(b)(6) Challenges to FHA Claim*

Having determined that Plaintiffs have standing to bring their FHA claim, the undersigned now addresses whether Plaintiffs have sufficiently stated a claim under 12(b)(6) with respect to their FHA claim.

Plaintiffs bring suit under section 3604(a)-(f) of the FHA, but they do not specify under which subsection they are suing.[8] (Doc. #35 at ¶ 45.) Upon review of Plaintiffs' complaint and

---

[8] Plaintiffs recite various subsections of section 3604 in full within this paragraph of their complaint. Plaintiffs additionally appear to recite the language of section 3617. None of these recitations include any specific allegations or explanation of how Defendant's alleged conduct violates these FHA provisions. The undersigned construes this section of the complaint as bringing a claim under unspecified provisions section 3604, as an underlying rights violation under applicable provisions of section 3604 would be required for Plaintiffs to state a claim for retaliation under section 3617. *See, e.g.*, *Williamson v. Brady*, No. 6:19-CV-00324-JCB-KNM, 2021 WL 2491800, at *4 (E.D. Tex. May 28, 2021).

13

broadly construing their allegations, the undersigned determines that only subsections (a) and (f)(1) are potentially applicable.

Section 3604(a) makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The essence of Plaintiffs' FHA claim is that Defendant made the apartment "unavailable" to them through its failure to remedy the apartment's uninhabitable and hazardous conditions. While the undersigned finds Plaintiffs' detailed account of the apartment conditions troubling and does not condone Defendant's alleged refusal to adequately maintain the apartment, "uninhabitability" does not make a dwelling "unavailable" within the meaning of section 3604(a). *See Cox v. City of Dallas*, 430 F.3d 734, 742-43 (5th Cir. 2004) ("[T]he simple language of § 3604(a) does not apply to current homeowners whose complaint is that the value or 'habitability' of their houses has decreased because such a complaint is not about 'availability.'");[9] *Treece v. Perrier Condo. Owners Ass'n*, 593 F. Supp. 3d 422, 437 (E.D. La. 2022) ("[U]nder § 3604(a)'s 'otherwise make unavailable' language, there is a distinction between availability and mere habitability, the latter of which § 3604(a) generally does not protect."); *Williamson v. Brady*, No. 2021 WL 2491800, at *5 (finding that the plaintiffs failed to state a claim under section 3617

---

[9] *Cox*, 430 F.3d at 745-46, discusses that section 3604(b) could potentially "encompass the claim of a current owner or renter for attempted and unsuccessful discrimination relating to the initial sale or rental or for actual or constructive eviction" because *Woods Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982), held that *actual* eviction and threats thereof constituted such a violation. Similar language is used in *Hood v. Pope*, 627 Fed. App'x 295, 298 (5th Cir. 2015), an unpublished case citing to *Cox*. Additionally, *Downing v. Pondugula*, No. 4:21-CV-1006-P, 2022 WL 1117446, at *3-5, held that a landlord's non-renewal of a lease and resulting eviction violated section 3406(b) based on this line of cases discussing the *possibility* that actual or constructive eviction may be encompassed by that subsection. The undersigned is not aware of a case, binding or otherwise, that has definitively held that *constructive* eviction falls within the conduct prohibited under section 3604(b), nor any other subsection of section 3604, and is not prepared to extend these cases to hold as such now. All the cases suggesting support for the notion that constructive eviction could fall under 3604(b) either noted that it was a *hypothetical* possibility or applied it in the context of *actual* eviction. Moreover, the binding holding of *Cox* with respect to section 3406(a) on "habitability" appears contradictory to such a reading of section 3604's provisions.

14

because there was no underlying rights violation, as making housing less habitable did not constitute making such housing "unavailable" under section 3604) (citing *AHF Cmty. Dev., LLC v. City of Dallas*, 633 F. Supp. 2d 287, 303 (N.D. Tex. 2009)). Plaintiffs have therefore failed to state a claim under section 3604(a).

Furthermore, as section 3604(f)(1) utilizes the identical operative language as section 3604(a), the undersigned finds that Plaintiffs[10] have also failed to state a claim under section 3604(f)(1) for the same reason. *See* 42 U.S.C. § 3604(f)(1) (stating it is unlawful "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of" the renter or person residing in that dwelling); *cf. Gatling v. Jubilee Hous., Inc.*, No. 20-3770, 2021 WL 5331707, at *8 (D.D.C. Nov. 16, 2021) (interpreting the term "dwelling" to have the same meaning within the FHA across different subsections of the statute).

B. <u>Leave to Amend</u>

As discussed *supra* § IV.A.2, repeated failure to cure deficiencies after being granted leave previously is a permissible reason to deny a plaintiff leave to amend a complaint. To date, Plaintiffs have amended their complaint twice. (Docs. #1, 32, 35.) Moreover, Plaintiffs were given the opportunity to provide additional factual details to support their claim through the court's questionnaire. (Docs. # 27, 34.) Despite four attempts, Plaintiffs have failed to adequately support any federal claims. Granting leave to amend once again would be futile and only serve to further delay this proceeding. Moreover, Plaintiffs may have viable state law claims that potentially could be brought in state court, and a proper dismissal of the underlying federal claims could help facilitate that step if Plaintiffs wish to proceed in bringing legal action against Defendant.

---

[10] The undersigned further notes that, even if Plaintiffs had stated a claim under section 3604(f)(1), only Vergie would be able to maintain such a claim under this subsection, as she is the only plaintiff who is alleged to have a disability.

15

Thus, the undersigned finds that Plaintiffs should not be granted leave to amend. Plaintiffs' FHA claim should therefore be dismissed with prejudice, and Plaintiffs' Title VI claim should remain stricken from the Second Amended Complaint.

### C. Supplemental Jurisdiction of State Law Claims

For the reasons discussed above, Plaintiffs' federal causes of action must be dismissed and/or stricken. Moreover, as explained *supra* § IV.A, a court may decline supplemental jurisdiction over pendant state law claims if the federal claims are dismissed. The court must consider judicial economy, convenience, fairness, and comity in deciding whether to exercise supplemental jurisdiction. *See Metropolitan Wholesale Supply, Inc. v. M/V Royal Rainbow*, 12 F. 3d 58, 61 (5th Cir. 1994). In the Fifth Circuit, the general rule is to dismiss state law claims when the federal claims to which they are pendant are dismissed. *See Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011).

This case is still in the early stages of litigation. Additionally, even though Plaintiffs do not have viable federal claims, they may have viable state law claims—particularly those relating Vergie's to constructive eviction from the apartment. Furthermore, the statute of limitations likely has not run on their state law claims. *Holmes v. P.K. Pipe & Tubing, Inc.* 856 S.W.2d 530, 539 (Tex. App—Houston, no pet.) (discussing the two-year statute of limitations under the DTPA, which appears to encompass several of the constructive eviction-related state law claims alleged by Plaintiffs). Even if the statute of limitations were approaching, the doctrine of equitable tolling would likely apply. *See, e.g.*, *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998).

Having considered judicial economy, convenience, fairness, and comity, the undersigned finds that the court should decline to exercise supplemental jurisdiction. Rather, Plaintiffs' state law claims should be dismissed without prejudice, and they are free to pursue them in state court.

## V. Conclusion

The undersigned's findings are summarized as follows: (1) Plaintiffs' Title VI claim is stricken from the Second Amended Complaint; (2) Plaintiffs have failed to state a claim under the FHA; (3) Plaintiffs should not be granted leave to amend their complaint; (4) the court should not exercise supplemental jurisdiction over the pendant state law claims.

Defendant's Motion to Dismiss should therefore be granted with respect to the FHA claim and denied as moot with respect to the Title VI claim and pendant state law claims.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends that Defendant's Motion to Dismiss (doc. #38) be **GRANTED** with respect to Plaintiffs' claims under the Fair Housing Act and **DENIED AS MOOT** with respect to the Title VI claim and pendant state law claims, and the pendant state law claims should be **DISMISSED WITHOUT PREJUDICE**.

## VII. Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 27th day of July, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE